UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| United States of America,<br><br>v.<br><br>Terry Bernard Brantley | Case No. 4:12-cr-00746-TLW<br><br>**Order** |

This matter is before the Court on Defendant Terry Brantley's *pro se* motion for a sentence reduction under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 247. For the reasons set forth below, his motion is denied.

## BACKGROUND

On February 20, 2013, Brantley was convicted of conspiracy to distribute 28 grams or more of cocaine base. ECF Nos. 123, 124. The Court imposed an overall sentence of 204 months of imprisonment. ECF No. 157. On September 30, 2020, his sentence of imprisonment was reduced to 192 months pursuant to Guideline Amendment 782. ECF Nos. 229, 236. BOP records reflect that he is scheduled to be released from custody on February 16, 2026.

## APPLICABLE LAW

Absent certain exceptions, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). One of those exceptions is the compassionate release statute. That statute provides, in relevant part, as follows:

> [T]he court, . . . upon motion of the defendant . . . , may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) . . . , if it finds that—(i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission

1

. . . .

18 U.S.C. § 3582(c)(1)(A). "A defendant who seeks compassionate release under § 3582(c)(1)(A)(i) has the burden of establishing that such relief is warranted." *United States v. Edwards*, 451 F. Supp. 3d 562, 565 (W.D. Va. 2020).

The Sentencing Commission has issued a policy statement addressing compassionate release motions—§ 1B1.13. But prior to the passage of the First Step Act, compassionate release motions could only be filed by the BOP, so § 1B1.13 by its terms only applies to BOP motions. *See United States v. McCoy*, 981 F.3d 271, 275–76 (4th Cir. 2020) (explaining the First Step Act's changes to the compassionate release statute). There is no corresponding policy statement addressing compassionate release motions filed by inmates. Thus, in *McCoy*, the Fourth Circuit held that, when considering an inmate's compassionate release motion, § 1B1.13 is not an "applicable policy statement[]." *Id.* at 284. But while § 1B1.13 may not directly apply to an inmate's motion, "it remains helpful guidance." *Id.* at 282 n. 7.

While § 1B1.13 may provide guidance, it is not an "applicable policy statement[]," so "district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *McCoy*, 981 F.3d at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d. Cir. 2020)) (emphasis in original); *see also United States v. Kibble*, 992 F.3d 326 (4th Cir. 2021). Ultimately, the determination of whether a case presents extraordinary and compelling reasons warranting a sentence reduction is a question reserved to the sound discretion of the district court.

## DISCUSSION

In Brantley's motion, he seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A) on grounds that his hypertension makes him especially vulnerable to becoming seriously ill from COVID-19 and based on his concerns for the health and care of his spouse. ECF No. 247. Specifically, Defendant asserts that his wife is experiencing serious health problems, including cancer and lupus. *Id.*

The Government opposes Defendant's motion, arguing that (1) he has not identified "extraordinary and compelling reasons," and (2) the § 3553(a) factors strongly disfavor a sentence reduction because he has failed to demonstrate that he is not a danger to the safety of the community.

In arguing that Defendant has not identified "extraordinary and compelling reasons" for a sentence reduction, the Government points out that Defendant was offered a vaccine and declined it. See ECF No. 251-1. "As the Government has explained, the guidelines policy statement treats as an 'extraordinary and compelling' circumstance a 'serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." ECF No. 251 at 10-11; U.S.S.G. § 1B1.13 app. Note 1(A)(ii). The Government acknowledges that an unvaccinated inmate presenting a risk factor identified by the CDC as increasing the risk of an adverse outcome from COVID-19, and who is not expected to recover from that condition, presents an extraordinary and compelling circumstance under that provision. The Government argues "that circumstance now

3

does not exist, as the available vaccines permit effective self-care against severe illness or death that may be caused by the coronavirus." ECF No. 251 at 11. Additionally, the Government notes that the only risk factor Defendant presents is hypertension, which the CDC "recently stated 'possibly' can make a person more prone to severe illness, as distinct from many other conditions that the CDC states can make severe illness more likely." *See id.* at 16. Accordingly, it is the Government's position that because Defendant (1) does not present a medical condition that is terminal or severely limits his ability to function in his correctional facility, and (2) was offered a vaccine and refused it, he has not established "extraordinary and compelling reasons" to support a sentence reduction under § 3582(c)(1)(A).

Next, the Government addresses Defendant's request for a sentence reduction based in part on his concerns for the health and care of his spouse. "Here, Brantley is seeking a reduction based on 'family circumstances.'" *Id.* at 17. The Government cites to the policy statement application note, which states that "extraordinary and compelling" reasons exist upon a showing of "(i) [t]he death or incapacitation of the caregiver of the defendant's minor child or minor children… [or] (ii) [t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." *Id.*; U.S.S.G. § 1B1.13, cmt. N.1(C)(i)-(ii). The Government argues that Defendant does not allege the death or incapacitation of the caregiver of any minor child, but rather "he asserts that his wife is experiencing serious health problems," including cancer and lupus. *Id.* at 18. The Government notes that Defendant has not provided any

4

documentation of these claimed conditions, nor has he established that she is incapacitated or that he is her only caregiver. *Id.* Therefore, it is the Government's position that there "is an insufficient basis" for the Court to conclude Defendant's family conditions constitute an "extraordinary and compelling reason" for a sentence reduction. *Id.*

The Government outlines Defendant' instant offense conduct and his criminal history in arguing that the § 3553(a) factors weigh against release. In particular, the Government points out that Defendant "was a drug trafficker responsible for the distribution of over 4 kilograms of crack and over 460 grams of powder cocaine during the course of the conspiracy" and that Defendant "also chose to arm himself during his drug dealings, as evidenced by the statements of historical witnesses and the recovery of ammunition from his residence and car." *Id.* at 19; PSR at ¶¶ 17-56. Furthermore, the Government argues that the Defendant's past conduct and criminal history weigh against release, including his inmate disciplinary history. *Id.* "His offense conduct, criminal history, continued criminal conduct while on parole and inmate disciplinary history also show that he is potentially dangerous and likely to commit further crimes." *Id.* at 20.

In considering whether to reduce Defendant's sentence, the Court has carefully reviewed the Presentence Investigation Report (PSR), and has considered the statutory penalties, the Guidelines range, applicable caselaw and statutory law, all of the § 3553(a) factors and the balancing of those factors, and his post-sentencing

conduct.[1] In light of those considerations, the Court concludes that Defendant has not shown that "extraordinary and compelling reasons" warrant a reduction or that the § 3553(a) factors weigh in favor of release. The Court's reasons for reaching this conclusion include (1) the absence of any medical condition or ailment presenting risk of severe illness and (2) the seriousness of the instant offense.

As to the "extraordinary and compelling reason" standard, the Court has considered all of the circumstances and arguments raised by Defendant and concludes that he has not established an "extraordinary and compelling reason" that warrants a sentence reduction.

Defendant argues that his medical condition—hypertension—as well as his desire to care for his wife—are extraordinary reasons warranting a sentence reduction. ECF No. 247 at 1. However, Defendant has not identified or argued the existence of any medical or health condition enumerated on the CDC's list of risk factors that creates an extraordinary basis for relief. The Court takes note that BOP medical records reflect (1) that Defendant contracted COVID-19 in January 2021 and, fortunately, appears to have recovered from it without significant consequence, and (2) that Defendant was offered the COVID-19 vaccine on April 14, 2021, and refused. *See* ECF No. 247-1 at 3; *see also* ECF No. 251-1 at 1. The Court acknowledges Defendant's desire to render care for his wife, whom he states, "is also struggling to

---

[1] The Court has considered in its analysis all of the issues raised in Defendant's filings, including (1) the impact of COVID-19 at his facility; (2) the way that the BOP is managing the pandemic at its facilities; (3) his asserted medical conditions in light of COVID-19; (4) and the percentage of his sentence served and the time remaining.

cope with this pandemic and desperately needs me home." ECF No. 247 at 1. This Court will consider the Defendant's wife's alleged health conditions in its decision.

Even if Defendant had established an "extraordinary and compelling reason," the Court concludes that his motion would still be denied based on its analysis and balancing of the § 3553(a) factors. The Court has balanced those factors in light of the compassionate release issues not in play at the original sentencing. *Kibble* at 335 (Gregory, C.J., concurring).

In conjunction with the § 3553(a) factors, it is appropriate to highlight the facts of the instant offense and Defendant's criminal history. The instant offense conduct is outlined in Paragraphs 16-56 of the PSR. The Court incorporates these paragraphs in this order by reference. The Court will not restate all of the facts here but will highlight the significant details. On March 7, 2012, a traffic stop was initiated by federal authorities on a vehicle being driven by Defendant upon receiving information that Defendant had been producing crack cocaine and planning to sell it. PSR ¶ 20. When officers stopped Defendant, both he and his brother, who was also in the vehicle, exited the vehicle and fled on foot. *Id.* After Defendant was located and apprehended, a ground search of the area where Defendant ran yielded a brown zip-up vehicle owner's case containing plastic bags of cocaine, crack, and 17 oxycodone pills. PSR ¶ 21. A search of the vehicle was conducted and a box of .32 auto Remington ammunition was found in the glove box. *Id.* Through the use of police incident reports, controlled drug buys and historical interviews, Defendant pled guilty to a serious offense—conspiracy to distribute 28 grams or more of cocaine base in and

7

around the Marion County area of South Carolina. ECF Nos. 123, 124. Defendant distributed both powder cocaine and crack cocaine, eventually being held accountable for 460.6 grams of powder cocaine and 4,062.42 grams of crack cocaine. PSR ¶ 56. He committed the instant offense while on state parole. *Id*. at ¶¶ 67, 79. In sum, Defendant was a significant drug trafficker held responsible for distributing over 4 kilograms of crack and over 460 grams of cocaine during the course of the conspiracy, dating back to 2005. *Id*. at ¶¶ 17-56, Additionally, he chose to carry a firearm during the conspiracy, for which he received a two-level enhancement at sentencing. *Id*. at ¶ 90.

Prior to Defendant's federal conviction for conspiracy to distribute 28 grams or more of cocaine base, his criminal history involved convictions for other serious drug conduct: (1) simple possession of marijuana in 1997 for which his $304 bond was forfeited; (2) assault and battery (two counts) later in 1997 for which his $304 bond was forfeited; (3) possession with intent to distribute a controlled substance (cocaine) in 1998, for which he received 10 years' imprisonment; (4) simple possession of marijuana in 2005, for which he served 30 days; (5) simple possession of marijuana in 2008 for which he paid a $575 fine; (6) failure to stop for a blue light in 2010, for which he paid a $128.75 fine; and (7) driving under the influence, first offense in 2012 which he was sentenced to 30 days or $1,022 fine. *Id*. at ¶¶ 62-68, 70, 73, 75. After the Court's review of Defendant's offense conduct and his criminal history, the Court concludes the "nature and circumstances of the offense" weigh against release.

In sum, Defendant's adult criminal history dates back to 1997. The instant offense—conspiracy to distribute 28 grams or more of cocaine base—occurred when the Defendant was on state parole, fleeing from police with ammunition and drugs inside the vehicle he was driving. His conduct demonstrates his disrespect for the law and his propensity to engage in criminal conduct. Upon review of the instant offense and Defendant's criminal history, the Court concludes that § 3553(a)(2)—the need for the sentence imposed—weighs against release. Defendant's sentence was and is necessary to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, and to protect the public from further crimes of the defendant.

The Court takes notice that while incarcerated for the instant offense, Defendant has accrued several disciplinary infractions—including possessing drugs/alcohol, refusing to obey an order, possessing an unauthorized item, possessing a non-hazardous tool and failing to follow safety regulations. ECF No. 251 at 19. This conduct indicates a lack of rehabilitation while incarcerated and weighs strongly against release.

As to §§ 3553(a)(3)-(4)—the Court considered the kinds of sentences available and the sentencing range established for the offense—the Court notes that Defendant is in the criminal history category of IV because of his prior convictions combined with the commission of the instant offense while on state parole. PSR at ¶¶ 78, 79, 80. As noted earlier, Defendant's firearm possession resulted in the enhancement of his offense level by two levels. *Id.* at ¶ 90. Defendant's Guidelines range was 235 to

293 months' imprisonment and his supervised release range was 4 years. *Id*. at ¶¶ 119, 125, 128. The plea contained a Rule 11(c)(1)(C) agreement to a term of 17 years' incarceration followed by the appropriate statutory term of supervised release. *See* ECF No. 119 at 6. The Court accepted the parties' agreement and imposed a 204-month sentence followed by 4 years of supervised release. ECF Nos. 148, 157. On September 30, 2020, this Court reduced his sentence of imprisonment to 192 months pursuant to Guideline Amendment 782. ECF Nos. 229, 236. Therefore, the Court concludes that these factors also weigh against release. Additionally, the asserted health issues of the wife do not warrant release or reduction in light of the detailed discussion regarding the Defendant's federal conviction, prior record, and disciplinary record.

As stated above, in light of the serious nature of the instant offense and Defendant's criminal history, the sentence imposed was necessary to reflect the seriousness of the offense and to protect the public from further crimes of Defendant. The Court's § 3553(a) analysis counsels that release is not warranted. The Court concludes it is appropriate to require the Defendant to serve the remainder of the sentence imposed.

In light of the seriousness of the instant offense, and Defendant's criminal history, the Court finds that the 3553(a) factors weigh against release. Accordingly,

his compassionate release motion, ECF No. 247, is **DENIED**. [2] [3]

      **IT IS SO ORDERED.**

*s/ Terry L. Wooten*
Terry L. Wooten
Senior United States District Judge

May 26, 2022
Columbia, South Carolina

---

[2] To the extent he seeks an order directing the BOP to grant him an early release to home confinement pursuant to the CARES Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (2020), the Court does not have discretion to issue such an order. *See, e.g.*, *United States v. Hendrix*, No. 1:10-cr-00067-MR-WCM-2, 2020 WL 2319698, at *1 (W.D.N.C. May 11, 2020) ("The discretion to release a prisoner to home confinement lies solely with the Attorney General. The legislation recently passed by Congress to address the COVID-19 pandemic does not alter this." (citations omitted)).

[3] The Court has given careful and full consideration to the Fourth Circuit's recent per curiam opinion in *Kibble*, including the concurring opinions, and has applied those standards in considering this motion. It has also reviewed the Fourth Circuit's recent decision in *United States v. High*, 997 F.3d 181 (4th Cir. 2021) and has similarly applied those standards.

11